Argued and submitted July 18, reversed and remanded September 12, reconsideration denied November 9, petition for review denied December 11, 1984 (298 Or 334)

# CARSNER,
*Appellant,*

*v.*

# FREIGHTLINER CORPORATION,
*Respondent.*

## (A8302-01032; CA A30410)

688 P2d 398

Bernard Jolles, Portland, argued the cause for appellant. On the brief was Burton H. Bennett, Portland.

Richard C. Hunt, Portland, argued the cause for respondent. With him on the brief was Richard N. Van Cleave, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Michael D. Reynolds, Assistant Attorney General, Salem, filed a brief amicus curiae for Mary Wendy Roberts, Commissioner, Bureau of Labor & Industries.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This action arises out of defendant's conduct toward and dismissal of plaintiff as defendant's employe after plaintiff complained about job safety practices. Plaintiff alleged in his first claim that the discharge was discriminatory and unlawful under ORS 654.062. His second claim was for "outrageous and intentional infliction of emotional distress." Defendant moved to dismiss both claims, the first on the ground that the action had not been commenced within the time allowed by statute and the second on the ground that there is an exclusive statutory remedy that precludes prosecution of a tort action. The trial court allowed both motions and entered judgment for defendant. Plaintiff appeals, and we reverse.

Plaintiff was discharged on October 22, 1981. On November 19, 1981, he filed a complaint with the Civil Rights Division of the Bureau of Labor and Industries (Bureau). Exactly one year after the filing of the complaint, the Commissioner of the Bureau made her determination that substantial evidence existed to support its allegations. Plaintiff brought this action on February 15, 1983. Defendant asserts that the action was untimely. The disagreement between the parties turns on whether and to what extent the procedures and time limitations of ORS chapter 659, relating to discriminatory employment practices, are applicable to this proceeding under ORS 654.062.

Under ORS chapter 659, an employe claiming to be aggrieved by discrimination based upon race, sex, age or certain other matters may bring a civil action, ORS 659.121(3), or may first file a complaint with the Bureau pursuant to ORS 659.040(1). ORS 659.095(1) provides that, when the employe follows the latter course:

"If, within one year following the filing of a complaint pursuant to ORS 659.040(1) * * * the commissioner has been unable to obtain a conciliation agreement with a respondent, or has not caused to be prepared and attempted to serve the specific charges referred to in ORS 659.060(1), the commissioner shall so notify the complainant in writing and within 90 days after the date of mailing of such notice, the complainant may file a civil suit as provided for in ORS 659.121. Within one year following the filing of the complaint, the

commissioner may issue, or cause to be issued, an administrative determination. If no administrative determination has been issued at the end of the one-year period, the commissioner has no further authority to continue proceedings to resolve the complaint * * *. If prior to the expiration of one year from the filing of a complaint pursuant to this section the commissioner dismisses the complaint for any reason other than a dismissal pursuant to ORS 659.060(3), or the complainant requests the commissioner to terminate proceedings with respect to the complaint, the commissioner shall notify the complainant of said dismissal or termination in writing, and within 90 days after the date of mailing of such notice of dismissal or termination, a civil suit may be filed as provided for in ORS 659.121."

ORS 659.121(3) provides, as relevant, that

"[w]here a complaint has been filed pursuant to ORS 659.040(1) * * * the civil suit or action provided for herein shall be commenced only in accordance with the time limitations provided for in ORS 659.095. * * *"

When an employer's unlawful conduct arises from an employe's complaints about safety practices instead of race, sex, age and the other subjects specified in ORS chapter 659, ORS 654.062(5), not ORS 659.040(1) is the statute that authorizes a complaint by the employe to the Bureau. ORS 654.062(5) provides in relevant part:

"(b)   Any employe or prospective employe who believes that the employe has been barred or discharged from employment or otherwise discriminated against in compensation, or in terms, conditions or privileges of employment, by any person in violation of this subsection may, within 30 days after the employe has reasonable cause to believe that such a violation has occurred, file a complaint with the Commissioner of the Bureau of Labor and Industries alleging such discrimination *under the provisions of ORS 659.040.* Upon receipt of such complaint the commissioner shall process the complaint and case *under the procedures, policies and remedies established by ORS 659.010 to 659.110* and the policies established by ORS 654.001 to 654.295 *in the same way and to the same extent that the complaint would be processed by the commissioner if the complaint involved allegations of unlawful employment practices based upon race, religion, color, national origin, sex or age* under ORS 659.030(1)(f). The affected employe shall also have the right to bring a suit

in any circuit court of the State of Oregon against any person alleged to have violated this subsection. * * *

"(c)    Within 90 days after the receipt of a complaint filed under this subsection the commissioner shall notify the complainant of the commissioner's determination under paragraph (b) of this subsection." (Emphasis supplied.)[1]

There is no question that, if the ORS chapter 659 provisions were applicable here, plaintiff's action would be timely. The Bureau's determination was made within one year after the complaint was filed, and the action was brought less than 90 days after the issuance of the determination. However, defendant argues that the period for bringing a civil action under ORS 654.062(5) differs from the time for bringing an action pursuant to the relevant provisions of ORS chapter 659. ORS 659.095 provides that the commissioner "has no further authority to continue proceedings to resolve" a complaint filed under ORS 659.040(1) if an administrative determination has not been issued within one year. There is no "loss of authority" provision in ORS 654.062(5). Defendant nevertheless contends that a loss of jurisdiction provision must be read into ORS 654.062(5)(c) and that, because that statute requires the commissioner to notify the complainant of her determination within 90 days after receipt of the complaint, she loses her authority to act after 90 days rather than after the one-year period provided by ORS 659.095(1). Therefore, according to defendant,

"* * * [n]inety days from [the filing of plaintiff's complaint with the Bureau] or on approximately February 19, 1981, the Commissioner had no further authority to continue proceedings to resolve the complaint lodged pursuant to ORS 654.062(5)(b). Plaintiff had a maximum of an additional 90 days in which to commence a civil suit against defendant, ORS 695.095. [sic] * * *

"* * * It is clear * * * that the one-year period for administrative handling of certain discrimination claims by the Commissioner of Labor and Industries contemplated in ORS 659.095 is not applicable to safety discrimination claims arising under ORS 654.062(5)(b). * * *"

---

[1] The quoted version of the statute incorporates the amendment by Oregon Laws 1983, chapter 275, section 1. The amendment has no substantive bearing on the issues in this appeal.

Defendant concludes that, because plaintiff did not institute this action within 180 days after filing his complaint with the Bureau, the action is time-barred.

The central premise of defendant's argument is that, *generally,* the ORS chapter 659 time limits and procedures are separate from and do not apply to complaints and ensuing civil actions brought under ORS 654.062(5). However, defendant postulates that there are two ways in which ORS 659.095 *does* apply: first, the provision of ORS 659.095 that the commissioner loses her authority over ORS 659.040(1) complaints if she does not issue an administrative determination *within one year* applies by analogy and has the effect of divesting the commissioner of jurisdiction under ORS 654.062(5)(c) if she does not notify the complainant of her determination *within 90 days;* and, second, the 90-day period ORS 659.095 allows for bringing a civil action after the administrative process is concluded applies to ORS 654.062, as well as ORS chapter 659 proceedings.

If the chapter 659 procedures are otherwise inapplicable, we discern (and defendant suggests) no persuasive reason why the two provisions of ORS 659.095 defendant extracts from the statutory scheme should apply selectively to proceedings under ORS 654.062(5). ORS 654.062(5)(c) contains no language like that of ORS 659.095 to the effect that the commissioner loses authority over a complaint if she fails to act within a specified time. Defendant does not explain why the express loss of authority language of ORS 659.095 should be read into another statute that contains no such language and that defendant considers to be unconnected with ORS 659.095 in virtually all other respects.

■ Defendant argues that an interpretation of ORS 654.062(5)(c) that allows the commissioner to retain jurisdiction if she fails to act within 90 days would render the statute meaningless. We disagree. A statute is not meaningless simply because it does not relieve an official who has failed to comply with it of the duty to comply. As the amicus points out, there are procedures to compel compliance with the 90-day requirement of ORS 654.062(5)(c). *See, e.g.,* ORS 183.490.

For similar reasons, we reject defendant's conclusion that the 90-day ORS 659.095 period for bringing a civil action would apply to ORS 654.062(5) *if,* as defendant contends, the

procedures of ORS chapter 659 are not incorporated *generally* into the ORS 654.062(5) process. ORS 654.062(5) contains no time limit of its own for the commencement of civil actions. As plaintiff points out, it would follow more logically from defendant's argument than the conclusion defendant draws from it that there is *no* limit on the time for bringing an action after filing a claim under ORS 654.062, other than the limitation periods contained in any applicable sections of ORS chapter 12.

██ Leaving aside the absence of logical or authoritative support for the specific selective applications defendant would make of the chapter 659 procedures, the basic difficulty with defendant's argument is its failure to recognize that, by its terms, ORS 654.062(5) incorporates *all* of the chapter 659 procedures that are not inconsistent with its own provisions. *See Thomas v. Oregon Metallurgical,* 43 Or App 149, 602 P2d 338 (1979). ORS 654.062(5)(b) provides that complaints filed pursuant to it must allege "discrimination under the provisions of ORS 659.040" and are to be processed

> "* * * under the procedures, policies and remedies established by ORS 659.010 to 659.110 * * * in the same way and to the same extent that the complaint would be processed by the commissioner if the complaint involved allegations of unlawful employment practices based upon race, religion, color, national origin, sex or age * * *."

Nothing in ORS 654.062(5) is contrary to the ORS chapter 659 time limit for bringing a civil action, and that time limit was met here. The trial court erred by dismissing plaintiff's first claim.

The dismissal of the second claim presents a closer question. Defendant argues that "the conduct upon which [plaintiff] bases his second claim (tort) for relief is the exact same conduct set out in his first (statutory) claim" and that the statutory remedy created by ORS 654.062 is exclusive and precludes the claim for outrageous conduct.

Defendant relies principally on *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977), where the court held that a plaintiff discharged for complaining about safety conditions was foreclosed from bringing a tort action for wrongful discharge because of available remedies under federal statutes. The court explained:

"We feel that existing remedies are adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems. We also note that ORS 654.062(5) now provides a similar remedy under state law although, admittedly, these provisions were not in effect at the time of the conduct in question.[2] Therefore, we find it unnecessary to extend an additional tort remedy to cover this kind of situation. * * *" 278 Or at 352-53.

*Compare Holien v. Sears, Roebuck and Co.,* 66 Or App 911, 677 P2d 704, *rev allowed* 297 Or 124 (1984).

The distinction between *Walsh* and the present case is that the tort plaintiff alleges here is not wrongful discharge, the injury remedied by the statute, but outrageous conduct causing emotional distress. Defendant argues that the distinction is insignificant and states:

"* * * In *Gilbertson v. McLean et al,* 216 Or [6]29, 341 P2d 139 (1959) the Oregon Supreme Court refused to credit plaintiff-appellant's arguments that organizational picketing constituted a tort for which there existed a common law right of action prior to the adoption of the Little [Norris]-LaGuardia Act of Oregon (ORS Chapter 662). Instead, the court held:

" '* * * The 1953 Act created a new right that did not exist previously under the Anti-Injunction Act, and the specific remedy provided for the enforcement of the statute is therefore to be deemed the exclusive remedy. This is so notwithstanding the fact that before the Anti-Injunction Act the type of conduct in question might have been actionable.' 216 Or 629, 641

"Plaintiff-appellant had attempted, as is the case in the instant matter, to sue in tort so as to recover damages. The statutory remedy in *Gilbertson* was limited to an injunction or cease and desist order."

However, *Gilbertson* differs from this case for largely the same reasons that *Walsh* does. The question in *Gilbertson* was whether the plaintiff could bring a tort action for unlawful picketing and recover damages, notwithstanding a statute that provided for injunctive relief but not damages *for unlawful picketing.* The court did not hold in *Gilbertson* that, if

---

[2]The plaintiff in *Walsh* was discharged in December, 1972. ORS 654.062(5) was enacted by Oregon Laws 1973, chapter 833, section 14.

the defendants' actions constituted *both* the kind of picketing made unlawful by the statute *and* a *separate* tort, no common law right of action for the latter could exist. Indeed, the court said:

> "'* * * If the legislature had the power, as we have decided that it had, to make that type of picketing legal, to deny persons injured by it resort to any remedy either of injunction or the recovery of damages, it had the power while declaring such picketing illegal to limit the remedy for enforcing the statute to injunction. There is a difference between peaceful picketing and the use of explosives, just as there is between peaceful picketing and picketing accompanied with violence. The legislature may exercise a wide discretion in determining what are and what are not legitimate labor objectives, and in sanctioning the use of picketing for the achievement of legitimate objectives so long as the picketing is peaceful; but it has no power to license violence or to deprive persons of traditional remedies for intentional injury by violent conduct. * * *'" 216 Or at 640.

■■■ *Walsh* and *Gilbertson* stand for the proposition that a legislative remedy can supplant or limit common law remedies for a particular injury which the legislation addresses; they do not suggest that conduct that causes that injury cannot simultaneously cause a second injury that is outside the ambit of the statutory protection or that there can be no redress for the second injury because the statute provides an exclusive remedy for the first. We have held that an employer's actions toward an employe *can* support a claim for outrageous conduct. *Bodewig v. K-Mart, Inc.*, 54 Or App 480, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982).[3] We perceive no reason why the emotional distress that plaintiff claims he suffered as a result of defendant's alleged outrageous conduct should not be redressable simply because defendant's conduct may also have violated a statute designed to protect against a different evil. The trial court erred by dismissing the second claim as well as the first.

Reversed and remanded.

---

[3] We do not understand defendant to argue that plaintiff's allegations fail to state sufficient facts to constitute a claim or that the dismissal of the second claim is affirmable on any theory other than statutory preemption.