**George RAPTOPOLOUS, Plaintiff,**

v.

**WS, INC., an Oregon corporation, dba West State, Inc., and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 72, Defendants.**

**Civ. No. 89–655–FR.**

United States District Court,
D. Oregon.

May 23, 1990.

Stephen L. Brischetto, Baldwin & Brischetto, Portland, Or., for plaintiff.

Richard C. Hunt and James W. "Mike" Heller, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for defendant WS, Inc.

## OPINION

FRYE, District Judge:

In the matter before the court, defendant WS, Inc. (WSI) moves for summary judgment (# 13) on the first, second, third and fifth claims for relief of plaintiff, George Raptopolous.

## UNDISPUTED FACTS

Raptopolous is a member of International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 72 (Local 72).

In July, 1983, Raptopolous was employed by Dillingham Ship Repair (Dillingham) as a foreman under a collective bargaining agreement with Local 72. Raptopolous was fired by Dillingham on July 7, 1983, and thereafter filed a complaint against Dillingham with the Department of Labor alleging that he was terminated for protesting unsafe work practices. On July 29, 1983, Raptopolous and Dillingham settled their dispute, and Raptopolous was reinstated with back pay into the position of journeyman rigger rather than into his former position as foreman. After his reinstatement, Raptopolous filed a complaint against Dillingham with the Department of Labor alleging that Dillingham had retaliated against him for filing the first complaint by reinstating him into the position of journeyman rigger rather than into his former position as foreman. In September, 1985, the second dispute was resolved through settlement.

In October, 1984, Dillingham hired Edward Yeager as a rigging superintendent. Yeager was Raptopolous' supervisor.

In 1986, Dillingham was dissolved, and a new company called WSI opened for business. WSI hired Yeager and other management personnel of Dillingham.

In the spring of 1987, crafts employees at WSI voted to be represented by the Metal Trades Council, whose union affiliates include Local 72. During contract negotiations, Yeager developed a proposed not-for-dispatch list for WSI. The name of Raptopolous was on the list along with several other names. WSI gave the not-for-dispatch list to Local 72 at the bargaining table, but the list was not made a part of the contract.

WSI and the Metal Trades Council, including Local 72, arrived at a collective bargaining agreement which became effective on July 1, 1988. The collective bargaining agreement provides for the establishment of a preferential hiring list, whereby those whose names appear on the local union's preferential hiring list will be dispatched from local unions, such as Local 72, before other union members whose names are on the local union's out-of-work list. Dispatch to WSI from the local union's preferential hiring list can be made by the union without regard to seniority. Raptopolous' name was not on the preferential hiring list for Local 72.

From October, 1986 through July, 1988, Raptopolous applied for work at WSI on several occasions and was not hired. Raptopolous has applied for work in other locations in the Swan Island area and has not been hired. Others from Local 72 have been hired in this same period of time. During this time period, other members of Local 72 were hired at WSI despite the fact that there was no collective bargaining agreement with Local 72. Raptopolous was not informally referred by union officials to WSI, while he claims others were informally referred.

Pursuant to the collective bargaining agreement of July, 1988 between the Metal Trades Council and WSI, there is a grievance procedure available to Raptopolous

through union bylaws. Raptopolous has not filed a grievance because he contends that the filing of a union grievance would be a futile act since WSI and not Local 72 controls the "blacklist."

Raptopolous filed this action against WSI alleging that WSI and Local 72 "blacklisted" him from employment at WSI and other Portland area ship repair firms because he filed safety complaints and protested unsafe work practices at Dillingham in July, 1983. Raptopolous asserts the following claims for relief against WSI: 1) first claim for relief—conspiracy; 2) second claim for relief—interference with contract; 3) third claim for relief—interference with contract; and 4) fifth claim for relief—retaliation for opposing unsafe work practices in violation of O.R.S. 654.062(5).

WSI argues that the claim for conspiracy (claim 1) and the claims for interference with contract (claims 2 and 3) are preempted by the exclusive jurisdiction of the National Labor Relations Board and should be dismissed. WSI asserts that the fifth claim for relief (for retaliation) is barred by the applicable statute of limitations.

Raptopolous argues that federal jurisdiction does not preempt state law claims arising from violations of state statutes; that there was no collective bargaining agreement in effect between October, 1986 and July, 1988 when his claims arose; that preemption under the Labor Management Relations Act is not appropriate; and that WSI has relied upon the wrong statute of limitations period in an attempt to bar his fifth claim for relief.

## ANALYSIS AND RULING

WSI argues that the conduct alleged by Raptopolous in claims one, two and three under Oregon state law (conspiracy and interference with contract in blacklisting him for protesting the filing of safety complaints) are preempted by section 301 of the Labor Management Relations Act.

■ Section 301 of the Labor Management Relations Act preempts disputes involving an individual labor contract claimed to be inconsistent with a collective bargaining agreement in order to assure uniform federal interpretation of collective bargaining agreements. Section 301 entirely displaces state causes of action that are substantially dependent on the analysis of a collective bargaining agreement. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The key to determining the scope of preemption under section 301 is not how the complaint is framed, but whether the claims can be resolved only by interpreting the terms of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

■ Not every dispute concerning employment or tangentially involving a provision of a collective bargaining agreement is preempted by section 301. A claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 996 (9th Cir.1987).

■ Raptopolous alleges that in November, 1987, WSI entered into an agreement with Local 72 in order to "blacklist" him from future employment, and that WSI has interfered with his contractual relationship with Local 72 by advising Local 72 that it should not refer him to WSI for employment (Amended Complaint, paras. 7, 8); that WSI did this because he initiated complaints of unsafe work conditions in July, 1983 and September, 1984 against his former employer, Dillingham (Amended Complaint, para. 9); and that he learned of the nature and extent of his injury in June, 1987 after investigation of the failure of Local 72 to refer him for work (Amended Complaint, para. 26).

It is undisputed that in the spring of 1987, craft employees at WSI voted to be represented by the Metal Trades Council, including Local 72; that in October, 1987, WSI and the Metal Trades Council began labor contract negotiations; that these labor contract negotiations resulted in a collective bargaining agreement which became effective on July 1, 1988; that the

collective bargaining agreement includes a preferential hiring list that does not include Raptopolous; and that because of this provision of the collective bargaining agreement between WSI and the Metal Trades Council, Raptopolous has not been dispatched to WSI.

The resolution of the claims of Raptopolous of conspiracy and interference with contract cannot be addressed without examining the process of collective bargaining and the collective bargaining agreement. If Raptopolous was "blacklisted" by some conspiracy or action of WSI as he alleges, the resolution of this claim is dependent upon an examination of the collective bargaining process and an interpretation of the resulting collective bargaining agreement. The claims made by Raptopolous do not tangentially involve the collective bargaining agreement. An evaluation of these claims requires an analysis of the preferential hiring list in the collective bargaining agreement and poses a significant threat to the collective bargaining process.

Raptopolous relies upon *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857 (9th Cir.1987), to support his claim that preemption is not appropriate. In *Paige,* the court concluded that the federal labor laws do not preempt an independent state law claim for wrongful discharge. In *Paige,* the plaintiff employees refused to fill generators with gasoline under what they considered to be unsafe conditions and were subsequently discharged for their refusal. The court concluded that their claims for wrongful discharge could be resolved under the California Occupational Safety and Health Act without infringing on the collective bargaining process or considering the terms of the collective bargaining agreement.

In *Paige,* the court did not have to look to the collective bargaining agreement to decide whether the employees' claims of unsafe working conditions had merit. In the case before this court, Raptopolous alleges that "blacklisting" was a part of the collective bargaining process and was incorporated into the collective bargaining agreement.

In addition, Raptopolous was required to pursue his claims through the process of grievance and arbitration. Local 72 was a party to the agreement which resulted in his alleged "blacklisting," and Raptopolous had the right and an obligation to protest this action through the union grievance procedure process. The court finds that the first, second and third claims for relief are preempted by section 301.

■ Finally, WSI asserts that the fifth claim for relief under O.R.S. 654.062(5)(a) is barred by the applicable statute of limitations. O.R.S. 654.062(5)(a) provides in part:

It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employee or prospective employee because such employee has opposed any practice forbidden by [this Act], made any complaint or instituted or caused to be instituted any proceeding under or related to [this Act].

Raptopolous argues that the applicable statute of limitations is found in O.R.S. 12.110 since O.R.S. 654.062(5)(a) itself fails to include a specific time period for filing.

In *Carsner v. Freightliner Corp.*, 69 Or.App. 666, 688 P.2d 398 (1984), the court concluded that the one-year period contained in O.R.S. 659.121 applies to actions under O.R.S. 654.062(5) and explained:

[T]he basic difficulty with defendant's argument is its failure to recognize that, by its terms, ORS 654.062(5) incorporates *all* of the chapter 659 procedures that are not inconsistent with its own provisions. *See Thomas v. Oregon Metallurgical,* 43 Or App 149, 602 P.2d 338 (1979).... Nothing in ORS 654.062(5) is contrary to the ORS chapter 659 time limit for bringing a civil action.

69 Or.App. at 672, 688 P.2d 398.

Raptopolous alleges in his fifth claim for relief that he "learned of the nature and extent of his injury in June 1987." This action was not commenced until May 26, 1989, nearly two years after he learned of the alleged "blacklisting." The court concludes that the fifth claim is barred by the one-year statute of limitations period.

WSI's motion for summary judgment on the fifth claim for relief is granted.

## CONCLUSION

WSI's motion for summary judgment (# 13) on Raptopolous' first, second, third and fifth claims for relief is granted.